[723 NYS2d 470]

In the Matter of LEE M. MAGER (Admitted as LEE MARTIN MAGER), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 19, 2001

### APPEARANCES OF COUNSEL

*Mady J. Edelstein* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

No appearance for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Lee M. Mager was admitted to the practice of

law in the State of New York by the First Judicial Department on June 19, 1978, and at all times relevant to this proceeding has maintained an office for the practice of law within the First Department.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 603.4 (e) (1) (i), immediately suspending respondent from the practice of law based on his failure to cooperate with the Committee's investigation into allegations of serious professional misconduct on his part. Respondent requested and was granted a one-month adjournment, but he did not interpose a response to the Committee's motion.

The Committee is investigating five disciplinary matters involving respondent: four complaints from clients alleging neglect and a notice that a check written on respondent's IOLA account was returned for insufficient funds. The first complaint, in December 1998, concerned respondent's handling of an accident case. The client complained that respondent had not answered her inquiries and she had no information about what he had done on her behalf. In an answer dated February 18, 1999, respondent denied that he was avoiding his client, explained that the problem with her case was that the insurance carrier was taking a hard line, and promised that he would make every effort to "finish" her matter. The client disputed respondent's account and stated that it had taken 12 years and a complaint to the Committee to learn that respondent was not able to settle her case. The second complaint, dated June 1999, alleged that respondent was neglecting a foreclosure action. The third, dated August 1999, alleged that respondent received $50,000 from the executors of an estate he was representing for taxes and tax accounting fees but that the taxes had not been paid and no accounting services had been rendered. The fourth complaint, dated January 2000, alleged that after signing a settlement agreement in his personal injury matter in November 1998 the client had never received any funds. Respondent submitted nothing further on the first complaint and no answer to any of the later complaints until May 1, 2000, *infra.*

In July 1999, the Committee received a notice that a check written by respondent for $12,264 on his IOLA account had been dishonored on May 18, 1999. The Committee demanded a written explanation and bank records, and advised respondent that failure to submit a written answer may be deemed professional misconduct independent of the underlying investigation,

and that failure to produce the required records may violate Code of Professional Responsibility DR 9-102 (i) (22 NYCRR 1200.46 [i]) and may subject him to disciplinary proceedings. Respondent answered that he had mistakenly written the check in connection with a real estate transaction on the IOLA account instead of on a separate interest-bearing account, and that the funds had been replaced in full. He enclosed no bank records. The Committee advised respondent on November 8, 1999, that he risked a motion to suspend if he did not respond fully to its inquiry, as he had promised to do several times on the telephone with staff members. On December 2, 1999, respondent sent a letter promising to produce the bank records within a week and to provide a response to one of the other complaints, but he produced neither.

On April 7, 2000, the Committee sent respondent a letter referring to previous requests for information, files and documents relating to the four complaints of neglect and the matter of the dishonored IOLA check, and directing him to appear for a deposition on April 26 with the aforementioned files and the bank records. Respondent answered in five separate letters dated May 1, 2000. With respect to the accident case, he wrote that he was in regular contact with the client and that he was requesting a conference to "try to move the case forward." He did not produce the pleadings on her behalf that the Committee had requested. As to the foreclosure action, respondent wrote that he was preparing a petition for an accounting and would keep the Committee advised. Regarding the estate representation, respondent acknowledged that his entitlement to the funds he received from the executor was in dispute and stated that he would keep the Committee advised. With respect to the settled personal injury case, respondent stated that he had not received the settlement funds but expected to receive them in the next two weeks and would notify the Committee. The client reported on December 7, 2000, that he still had not received any settlement funds. The Committee received no further communication from respondent on any of these matters.

With his letter concerning the matter of the dishonored IOLA check, respondent submitted the monthly statements of his IOLA account for 1999, excepting the month of November. He submitted no checks, deposit items or ledger entries. He stated that two personal checks deposited into the account had been dishonored. However, records produced by his bank pursuant to subpoena show that respondent's IOLA account had a nega-

tive balance on 12 occasions between January and August 1999, and some checks appear to be for personal expenses.

Respondent was served with a judicial subpoena duces tecum returnable August 23, 2000, calling for his testimony and for the production of his ledgers for all escrow and IOLA accounts for 1999 and 2000. At his request, the deposition was adjourned to October 3, 2000, and then again to October 11, 2000. Two hours before he was scheduled to appear on October 11, respondent called the Committee to advise that he could not appear because he had three matters in court and was experiencing rectal bleeding, which required medical attention that afternoon. Respondent was directed, and agreed, to submit a detailed affirmation of actual engagement, to provide the particulars of his medical emergency, and to call again that afternoon.

The Committee received by fax the next morning respondent's affirmation listing two housing court matters, a Federal criminal matter and two matrimonial matters, incompletely identified and without docket numbers. Respondent wrote that he had not received medical attention the day before but was seeing a doctor late that morning. The next day, October 13, respondent offered, by fax, to appear on October 18 and promised to contact the Committee later that day. He did not contact the Committee again that day, and he did not respond to the fax it sent advising him that his affirmation was inadequate, that he must submit the particulars requested, and that his failure to appear was not excused. Respondent has not communicated with the Committee since October 13, 2000.

This Court may suspend an attorney from the practice of law pending disciplinary charges against him upon a finding that he is "guilty of professional misconduct immediately threatening the public interest" (22 NYCRR 603.4 [e] [1]), which finding may be based upon "the attorney's default in responding to the petition or notice, or the attorney's failure to submit a written answer to pending charges of professional misconduct or to comply with any lawful demand of this court or the Departmental Disciplinary Committee made in connection with any investigation, hearing or disciplinary proceeding" (§ 603.4 [e] [1] [i]). As the Committee submits, respondent's pattern of delay and evasion in answering complaints, providing documentation and appearing pursuant to a subpoena, including his utter failure to corroborate his potentially plausible excuse for his failure to appear, "evinces a shocking disregard for the judicial system, and can only be interpreted as a deliberate

and willful attempt to impede the Committee's investigation" (*Matter of Gordon*, 142 AD2d 135, 137).

Accordingly, the Committee's motion should be granted, and respondent suspended from the practice of law immediately and until further order of this Court.

ELLERIN, J. P., LERNER, SAXE, BUCKLEY and FRIEDMAN, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until the further order of this Court.