[910 NYS2d 424]

In the Matter of JOHN JAMES BAMBURY, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 19, 2010

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Stephen P. McGoldrick* of counsel), for petitioner.

No appearance for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent John James Bambury was admitted to the practice of law in the State of New York by the First Judicial Department on November 30, 1960.* At all times relevant to this proceeding, respondent has maintained an office for the practice of law within the First Judicial Department.

By order entered November 21, 1985, this Court suspended respondent until further order of the Court (*Matter of Bambury*, 114 AD2d 812 [1985]). Subsequently, by order entered July 2, 1991, this Court suspended respondent for seven years nunc pro tunc to the previous order, based upon his admission that, in his role as executor, he converted $31,000 in estate funds, as well as the mitigating evidence that he was "debilitated by alcoholism during the period covered by the charge" (*Matter of Bambury*, 169 AD2d 168, 169 [1991]). On January 21, 1993, this Court issued an order reinstating respondent (*Matter of Bambury*, 189 AD2d 704 [1993]).

The Departmental Disciplinary Committee now seeks an order pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii), immediately suspending respondent until further order of the Court, based upon his noncooperation with a Committee investigation and uncontested evidence of professional misconduct.

On or about May 5, 2009, the Committee received a complaint from Mr. and Mrs. Horn, who retained respondent in connection with refinancing two mortgages on property that they owned. According to the complaint, respondent received $294,500 from Llewellyn-Edison Savings Bank (the bank), which was to be used to pay off two of the couple's existing mortgages. The Horns claimed that respondent paid one mortgage in its full amount of $110,845.95, but only forwarded a partial payment of $166,295.20 for the second mortgage, instead of the entire $185,455.79.

The Horns stated that the difference between the closing proceeds of $294,500 and all disbursements made was $13,240. Further, the Horns alleged that respondent informed them that he had drawn a check to himself in that amount in payment of his fee, which the Horns claim was never authorized or discussed. Attached to the complaint were copies of

---

* Respondent, pro se, has not appeared in this proceeding.

checks drawn on respondent's account at Bank of America entitled "The Bambury Firm Attorneys and Counselors At Law" (the Bambury account) and a letter dated April 21, 2009 from the bank to respondent informing him that he had not forwarded the closing documents for the Horns' refinancing, which had closed on March 6, 2009. Notably, the Bambury account is not an escrow or IOLA account, as required, and the annexed checks show no indication that respondent drew a check to himself for $13,240 as he allegedly told the Horns.

The Committee forwarded a copy of the complaint to respondent, and by letter dated May 26, 2009, requested a written answer within 20 days. After being contacted twice by the Committee for his failure to comply with the request, respondent submitted an answer on June 22, 2009, in which he denied that he was ever retained as attorney by the Horns, and stated that all actions complained of were done at the direct request of the Horns.

On or about July 1, 2009, the Horns' counsel submitted a reply wherein he refuted respondent's claim that he was not the Horns' attorney and enclosed additional supporting documentation which included numerous correspondence between respondent and counsel for the bank. Following a review of all the documentation, first deputy chief counsel Sherry Cohen telephoned respondent on November 10, 2009 and requested certain records of the Bambury account, which respondent promised to produce the next day. Respondent failed to submit the requested records.

On January 29, 2010, the Committee served respondent with subpoenas seeking production of specified records of the Bambury account by February 10, 2010 and his appearance for a deposition on February 25, 2010. Respondent failed to produce the records, and claimed that he could not locate either subpoena when the Committee telephoned him. On February 18, 2010, the Committee mailed two additional copies of the subpoenas to respondent's office.

The Committee telephoned respondent again when he failed to appear for his deposition or provide the subpoenaed records, and respondent claimed that he had not received the additional copies of the subpoenas. On March 8, 2010, at respondent's residence, a Committee investigator effectuated personal service on respondent of two more copies of the subpoenas, along with a letter from the Committee stating

that respondent had until March 17, 2010 to produce the records, that his deposition had been rescheduled for March 25, 2010, and that if he failed to produce the records and/or appear for his deposition, the Committee would move for his immediate suspension.

When respondent did not provide any records or appear for his deposition, the Committee subpoenaed Bank of America to produce all statements, deposit slips and canceled checks from the Bambury account for the period of January through November 2009. The bank records show that on March 6, 2009, respondent received $294,500 in loan proceeds on behalf of the Horns, and disbursed a total of $281,260 on March 25, 2009, thereby leaving an undisbursed loan balance of $13,240. The closing balance for respondent's bank account for March 2009 was $17,948.54, which indicates that all but $4,708.54 of the funds on deposit were attributable to the Horns' remaining loan proceeds.

Further, the bank records show that between April and October 2009, respondent issued various checks to parties unrelated to the Horns' refinancing. As of October 31, 2009, the balance in respondent's bank account was $3,548.06, and the remaining funds from the Horns' refinancing in respondent's bank account was supposed to total $13,240.

The Committee now alleges that respondent's failure to comply with the two judicial subpoenas issued by this Court seeking his bank records and his appearance at a deposition "evinces a shocking disregard for the judicial system. . . [which] can only be interpreted as a deliberate and willful attempt to impede the Committee's investigation" warranting his suspension pursuant to 22 NYCRR 603.4 (e) (1) (i) (*Matter of Mager*, 282 AD2d 88, 91-92 [2001] quoting *Matter of Gordon*, 142 AD2d 135, 137 [1988]; *Matter of Fish*, 57 AD3d 112 [2008]; *Matter of Spiegler*, 33 AD3d 187 [2006]). This Court has held that misconduct similar to respondent's immediately threatens the public interest and warrants an interim suspension.

Accordingly, the Committee's motion for an order pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) should be granted, and respondent suspended from the practice of law, effective immediately, and until further order of this Court.

TOM, J.P., SWEENY, CATTERSON, McGUIRE and ROMÁN, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.